FILED
2011 DEC -9 PM 3:52
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br>     v.<br><br>RIGOBERTO HERNANDEZ and<br>JULIO TAMAYO,<br><br>             Defendants. | CR No. 11-01173<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1014: False Statement on Loan Application; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to Be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.  INTRODUCTORY ALLEGATIONS

1.  Custom House Home Loans ("CHHL") was a real estate mortgage company with its principal place of business in Santa Maria, California. CHHL was formed in or about February 2006 and operated through in or about April 2008. CHHL provided a range of real estate-related services to its clients, including assisting prospective home buyers in locating residential properties for

purchase and submitting loan packages to banks or lending companies ("lenders") to enable its clients to purchase or refinance residential properties.

2. Co-conspirator Brian Armet ("Armet") was a licensed mortgage broker and the principal owner of CHHL. Co-conspirator Armet worked as the main loan officer of CHHL. As CHHL's loan officer, co-conspirator Armet would prepare loan applications on behalf of clients and submit those applications to lenders to facilitate the successful funding of the clients' loans.

3. Defendant RIGO HERNANDEZ ("HERNANDEZ") was a real estate agent who worked with co-conspirator Armet at a related company owned by co-conspirator Armet, Custom House Real Estate ("CHRE"). Defendant HERNANDEZ assisted co-conspirator Armet in locating clients to purchase residential properties, and in assembling the information that was included on the clients' loan applications to finance the purchase of these properties.

4. If a client located by defendant HERNANDEZ succeeded in obtaining financing through CHHL, defendant HERNANDEZ would receive a substantial commission in connection with the real estate transaction.

5. Defendant JULIO TAMAYO ("TAMAYO") worked with co-conspirator Armet at CHHL. Defendant TAMAYO's role was to locate CHHL clients who needed loans to enable them either to purchase or to refinance residential properties. Defendant TAMAYO assisted co-conspirator Armet in preparing loan applications for CHHL clients by obtaining information from CHHL clients and in assembling the information that was included on the clients' loan applications.

6. If a client located by defendant TAMAYO succeeded in obtaining financing through CHHL, defendant TAMAYO would receive a substantial commission in connection with the loan transaction.

B. THE OBJECTS OF THE CONSPIRACY

7. Beginning in or about February 2006, and continuing to in or about April 2008, within the Central District of California and elsewhere, defendants HERNANDEZ and TAMAYO, together with co-conspirator Armet and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States: (1) to knowingly make false statements or reports for the purpose of influencing, in connection with a loan application, the actions of institutions the accounts of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), in violation of Title 18, United States Code, Section 1014; and (2) to design, participate in, and execute a scheme to defraud lenders of CHHL's clients through the use of interstate wires, in violation of Title 18, United States Code, Section 1343.

C. THE MANNER AND MEANS OF THE CONSPIRACY

8. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

   a. Defendants HERNANDEZ and TAMAYO would meet with prospective clients of CHRE and CHHL and gather financial and employment information from these clients in order to assemble loan packages on their behalf for submission to the lenders. Defendants HERNANDEZ and TAMAYO would then provide the assembled information to co-conspirator Armet for further review and inclusion in the clients' loan applications to the lenders for the purchase or refinance of residential properties.

b.  In some instances, if co-conspirator ARMET determined that the assembled information was likely insufficient to ensure that a client would qualify for the funding of a loan, he would request defendant TAMAYO or defendant HERNANDEZ, or others, to contact third-party employers in order to obtain their agreement to verify that a particular client of CHHL was employed by the third party in a specific position when, in fact, that client was either not an employee of the third party or did not have the position specified.

c.  In other instances, in initially providing client information to co-conspirator Armet about a prospective CHHL client, defendant TAMAYO, aided and abetted by defendant HERNANDEZ, would inform co-conspirator Armet that he would secure the agreement of third-party employers falsely to verify that a particular CHHL client was employed by the third party in a specific position when, in fact, that client was either not an employee of the third party at all or did not have the position specified.

d.  Relying on the assurances of defendant TAMAYO, aided and abetted by defendant HERNANDEZ, that he had secured the agreement of third-party employers falsely to verify employment information for CHHL clients, co-conspirator Armet would include false and fraudulent information regarding the employment of particular clients of CHHL in the final loan applications that were submitted to the lenders, including lenders whose accounts were then insured by the FDIC, thereby enhancing the likelihood that these loan applications would be approved for funding.

e.  Based on the submission of loan applications by co-conspirator Armet containing false employment information about

4

particular clients of CHHL, the lenders would decide in numerous instances to fund these loans and would transmit the loan proceeds through the use of interstate wires.

      f. Following the successful funding of loans involving borrowers on whose behalf false employment information was submitted by CHHL, co-conspirator Armet would prepare checks payable to the employers who had agreed falsely to confirm employment information on behalf of CHHL borrowers, and these checks would be delivered to the employers by defendant HERNANDEZ or defendant TAMAYO.

D. <u>OVERT ACTS</u>

    9. In furtherance of the conspiracy and to accomplish its objects, defendants HERNANDEZ and TAMAYO, together with co-conspirator Armet, and others known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

    <u>Overt Act No. 1</u>: In or about September 2006, defendant TAMAYO informed co-conspirator Armet that he had contacted the owner of an entity called ZZYZX, who agreed to provide false employment information for a client of CHHL named GB.

    <u>Overt Act No. 2</u>: On or about October 12, 2006, co-conspirator Armet submitted a loan application to Homecomings Financial, a mortgage lender, on behalf of CHHL client GB, falsely stating that GB had been employed for five years as a computer engineer by an entity called ZZYZX.

    <u>Overt Act No. 3</u>: In or about October 2006, defendant TAMAYO informed co-conspirator Armet that he had contacted the owner

of an entity called CJJ Farming, who agreed to provide false employment information for a client of CHHL named JH.

Overt Act No. 4: On or about December 7, 2006, co-conspirator Armet submitted a loan application to Homecomings Financial, a mortgage lender, on behalf of CHHL client JH, falsely stating that JH had been employed for four years as a supervisor for CJJ Farming.

Overt Act No. 5: On or about December 12, 2006, co-conspirator Armet caused $289,321.47 to be wired from First American Trust, FSB in Santa Ana, California, account no. xxxxxx3613, through the Fedwire system in New Jersey, to an account at Bank of America, New York, N.Y., account no. xxxxxx9173.

Overt Act No. 6: In or about April 2007, defendant HERNANDEZ contacted JC at CJJ Farming and requested that JC falsely verify that a CHHL client, EH, was employed as a supervisor at CJJ Farming for the prior three years or so.

Overt Act No. 7: On or about April 11, 2007, co-conspirator Armet submitted a loan application to Homecomings Financial, on behalf of CHHL client EH, falsely stating that EH was employed for the past three years and four months as a supervisor at CJJ Farming.

Overt Act No. 8: On or about April 16, 2007, co-conspirator Armet caused $79,038.69 to be wired from JP Morgan Chase in Petaluma, California, account no. xxxx6028, through the Fedwire system in New Jersey, to a United General Title Co. account at Heritage Oaks Bank, account no. xxxxx6206, in trust for EH.

Overt Act No. 9: On or about April 16, 2007, co-conspirator Armet caused $350,171.11 to be wired from JP Morgan

6

Chase in Petaluma, California, account no. xxxx6028, through the Fedwire system in New Jersey, to a United General Title Co. account at Heritage Oaks Bank, account no. xxxxx6206, in trust for EH.

Overt Act No. 10: In or about April 2007, defendant TAMAYO informed co-conspirator Armet that he had contacted the owner of an entity called Roofing Concepts, who agreed to provide false employment information for a client of CHHL named JC.

Overt Act 11: In or about April 2007, co-conspirator Armet submitted a loan application to Countrywide Home Loans, on behalf of CHHL client JC, falsely stating that JC was employed for six years as a foreman by an entity called Roofing Concepts.

Overt Act No. 12: In or about late April or early May 2007, defendant TAMAYO informed co-conspirator Armet that he had contacted the owner of an entity called Roofing Concepts, who agreed to provide false employment information for a client of CHHL named NO.

Overt Act No. 13: In or about June 2007, co-conspirator Armet submitted a loan application to Countrywide Home Loans, on behalf of CHHL client NO, falsely stating that NO was currently employed as a site supervisor by an entity called Roofing Concepts.

Overt Act No. 14: In or about June 2007, defendant TAMAYO informed co-conspirator Armet that he had contacted the owner of an entity called Angelica's Floral Design, who agreed to provide false employment information for a client of CHHL named VV.

Overt Act No. 15: On or about June 29, 2007, co-conspirator Armet submitted a loan application to Homecomings Financial, a mortgage lender, on behalf of CHHL client VV, falsely

7

stating that VV had been employed for five years as a marketing/sales manager at Angelica's Floral Design.

Overt Act No. 16: In or about July 2007, defendant HERNANDEZ contacted JC at CJJ Farming and requested that JC falsely verify that a CHHL client, NZ, was employed at CJJ Farming.

Overt Act No. 17: On or about July 10, 2007, co-conspirator Armet submitted a loan application to Homecomings Financial, a mortgage lender, on behalf of CHHL client NZ, falsely stating that NZ was employed for 12 years as a marketing sales manager at CJJ Farming.

COUNT TWO

[18 U.S.C. §§ 1014, 2]

10. The Grand Jury realleges and incorporates by reference paragraphs 1-6 and 8-9 above, as though fully set forth herein.

11. In or about April 2007, in Santa Barbara County, within the Central District of California and elsewhere, defendants HERNANDEZ and TAMAYO and co-conspirator Armet, aiding and abetting one another, knowingly caused a material false statement to be made for the purpose of influencing the actions of Countrywide Home Loans ("Countrywide"), an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application submitted on behalf of CHHL client JC, in that defendants TAMAYO and HERNANDEZ and co-conspirator Armet caused JC's loan application to state that JC had been employed for six years and four months as a foreman by an entity named Roofing Concepts, when in truth and in fact, as defendants TAMAYO and HERNANDEZ then well knew, CHHL client JC was not so employed.

## COUNT THREE

[18 U.S.C. §§ 1014, 2]

12. The Grand Jury realleges and incorporates by reference paragraphs 1-6 and 8-9 above, as though fully set forth herein.

13. In or about June 2007, in Santa Barbara County, within the Central District of California and elsewhere, defendants HERNANDEZ and TAMAYO and co-conspirator Armet, aiding and abetting one another, knowingly caused a material false statement to be made for the purpose of influencing the actions of Countrywide, an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, in connection with a loan application submitted on behalf of CHHL client NO, in that defendants TAMAYO and HERNANDEZ and co-conspirator Armet caused NO's loan application to state that NO was currently employed as a site supervisor by an entity named Roofing Concepts, when in truth and in fact, as defendants TAMAYO and HERNANDEZ then well knew, CHHL client NO was not so employed.

COUNTS FOUR THROUGH EIGHT

[18 U.S.C. §§ 1343, 2]

14. The Grand Jury realleges and incorporates by reference paragraphs 1-6 and 8-9 above, as though fully set forth herein.

15. On or about the dates set forth below, within the Central District of California and elsewhere, defendants HERNANDEZ and TAMAYO and co-conspirator Armet, aiding and abetting each other, and assisted by others known and unknown to the Grand Jury, for the purpose of carrying out the scheme to defraud victim lending banks in order to obtain money or property by means of false or fraudulent pretenses, representations or promises, as described above, caused the following to be transmitted by means of wire and radio communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FOUR | 12/12/2006 | $289,321.47 sent from First American Trust, FSB, in Santa Ana, CA, account no. xxxxxx3613, through the Fedwire system in New Jersey, to an account at Bank of America, New York, N.Y., account no. xxxxxx9173. |
| FIVE | 4/16/2007 | $79,038.69 sent from JP Morgan Chase in Petaluma, CA, account no. xxxx6028, through the Fedwire system in New Jersey, to a United General Title Co. account at Heritage Oaks Bank, account no. xxxxx6206, in trust for EH. |

| | | |
|---|---|---|
| SIX | 4/16/2007 | $350,171.11 sent from JP Morgan Chase in Petaluma, CA, account no. xxxx6028, through the Fedwire system in New Jersey, to a United General Title Co. account at Heritage Oaks Bank, account no. xxxxx6206, in trust for EH. |
| SEVEN | 7/24/2007 | $492,722.43 sent from JP Morgan Chase in New York, N.Y., account no. xxxx6028, through the Fedwire system in New Jersey, to a Chicago Title Co. account at Bank of America, account no. xxxxxx3283, in trust for NZ. |
| EIGHT | 7/24/2007 | $92,817.09 sent from JP Morgan Chase in New York, N.Y., account no. xxxx6028, through the Fedwire system in New Jersey, to a Chicago Title Co. account at Bank of America, account no. xxxxxx3283, in trust for NZ. |

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*(signature)*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section


JILL T. FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section


PAUL G. STERN
Assistant United States Attorney
Senior Litigation Counsel, Major Frauds Section